## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEREMIAH PERKINS,<br><br>              Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF NEBRASKA, BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, UNIVERSITY OF NEBRASKA-LINCOLN UNIVERSITY POLICE DEPARTMENT, OWEN YARDLEY, Police Chief, University of Nebraska-Lincoln; CHRISTINE JACKSON, Vice Chancellor for Business and Finance for the University of Nebraska-Lincoln; and JOHN AND JANE DOE 1 TO 100, unknown State actors;<br><br>              Defendants. | 4:17CV3070<br><br>AMENDED<br>MEMORANDUM AND ORDER |

This matter is before the Court on Defendants' Motions to Dismiss, ECF No. 15. Defendants assert that this Court lacks subject matter jurisdiction and/or that Plaintiff Jeremiah Perkins failed to state a claim on which relief can be granted. Because all parties have submitted matters outside the pleadings, the Court will convert the Motion, in part, to one for summary judgment. For the reasons stated below, the Motions will be granted.

## BACKGROUND

Except as indicated, the following facts are those alleged in the Complaint, ECF No. 1, and assumed true for purposes of the Motion to Dismiss for lack of subject matter jurisdiction. Properly referenced and undisputed material facts also have been

considered for purposes of summary judgment, regarding the Defendants' assertion that the Plaintiff has not presented a claim on which relief can be granted.

Plaintiff Jeremiah Perkins was a student at the University of Nebraska on its Lincoln (UNL) campus since the fall of 2016. On April 14, 2017, one or more students assaulted Perkins. On April 15, 2017, Defendant University Police Department (UPD) issued Perkins a "Trespass Warning Ban and Bar Notice" (the "Ban"), which banned Perkins from the UNL campus, as well as any other University of Nebraska property, for a period of not less than 4 years. The Ban allowed Perkins to submit an appeal within 5 business days after receipt, which Perkins did.

On April 20, 2017, Defendant Vice Chancellor Christine Jackson issued a denial of the appeal without a formal hearing. Perkins alleges that Jackson and Defendant Owen Yardley, the UPD Chief of Police, had the discretion and authority to afford Perkins the opportunity for a hearing on the Ban, but failed to do so. Perkins further alleges that he was not advised he would be given the opportunity to make any further challenge to the Ban until after he filed his Complaint in this case. Perkins Aff., ECF No. 18-1, Page ID 126.

After the Ban was issued, an investigator with UNL contacted Perkins. Title IX[1] charges were brought against Perkins, and Perkins met with Title IX investigators as early as June 6, 2017. *Id.* Perkins alleges that the Title IX investigators represented to him that, regardless of the outcome of the Title IX investigation, the Ban would not be

---

[1] Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688. The Court presumes that UNL brought charges against Perkins under Title IX's implementing regulations. Perkins does not describe the nature of the Title IX charges against him and they are not relevant to the outcome of the pending Motion.

affected. However, at some point after Perkins filed his Complaint, on June 13, 2017, the University of Nebraska notified Perkins that the Title IX proceedings could affect the Ban. *Id.*

On August 7, 2017, the UNL Student Conduct Board held a hearing regarding the Title IX charges against Perkins. The Board held that Perkins violated the UNL Student Code of Conduct and imposed sanctions. Perkins was sent notice of the Board's decision on August 10, 2017, and was informed that he could file an appeal of the decision before August 18, 2017.

Also on August 10, 2017, Yardley emailed a letter to Perkins informing him that the Ban had been lifted. ECF No. 16-1, Page ID 101. The University's trespass procedures had been amended to provide that a person filing an appeal of a ban-and-bar notice could request an in-person or telephonic hearing. *Id.* Unless such a request were made and granted, appeals were to be submitted based on written documentation. *Id.*

Perkins alleges that although the Ban was lifted and the procedures for challenging the Ban were amended, he was deprived of due process rights under the Fourteenth Amendment, and he incurred significant attorney's fees and other damages due to Defendants' failure to provide him an opportunity for a hearing. *See* Perkins Aff. ¶ 7, ECF No. 18-1, Page ID 126. Defendants argue that the Court lacks subject matter jurisdiction and that they are entitled to immunity from suit.

**STANDARD OF REVIEW**

**I. Mootness Under Rule 12(b)(1)**

"[M]ootness and standing are questions of subject matter jurisdiction." *Doe v. Nixon*, 716 F.3d 1041, 1047 (8th Cir. 2013). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young America Corp. v. Affiliated Comput. Servs.*, 424 F.3d 840, 843-44 (8th Cir. 2005) (citing *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual challenge to jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (citing *Osborn*, 918 F.2d 724, 730). The plaintiff has the burden of proving jurisdiction exists; "[h]owever, the 'heavy' burden of proving mootness falls on the party asserting the case has become moot." *Kennedy Building Associates v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d 724.

## II. Conversion to Motion for Partial Summary Judgment

The Court will convert Defendants' Motion, in part, into one for summary judgment because both parties submitted matters outside the pleadings. Rule 12(b) "does not require the court to give affirmative notice to the parties of its intent to

4

consider matters outside the complaint." *Angel v. Williams*, 12 F.3d 786, 788 (8th Cir. 1993). Constructive notice of the court's intention to consider matters outside the pleading is sufficient. *See id.* at 789. In *George v. City of St. Louis*, the Eighth Circuit held that the district court properly converted a motion to dismiss to one for summary judgment where the defendants' motion was clearly worded in the alternative; plaintiffs themselves submitted to the district court matters outside the pleadings; and plaintiffs specifically addressed the summary judgment standard in their brief to the district court. 26 F.3d 55, 57 (8th Cir. 1994).

All parties in this case submitted evidence outside the pleadings in support of their respective positions. *See* Defendants' Index of Evidence, ECF Nos. 16, 20; Plaintiff's Index of Evidence, ECF No. 18. Although Defendants did not word their Motion in the alternative, Perkins himself submitted an affidavit that addressed several matters not alleged in his Complaint. Perkins's affidavit included assertions regarding the damages he has suffered and the sufficiency and expediency of the hearing he received. In his brief, Perkins specifically discussed the Court's discretion to consider matters outside the pleadings and convert the Motion into one for summary judgment and, similar to the plaintiffs in *George*, referenced the summary judgment standard. Pl. Br. at 4, ECF No. 19, Page ID 132. The Court has considered the parties' evidence outside the pleadings with respect to Defendants' assertion of the qualified immunity defense. Accordingly, for purposes of evaluating qualified immunity, the Court converts Defendants' Motion to one for summary judgment.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do

6

more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

Defendants move to dismiss the Complaint on several grounds. First, they argue that Perkins's claims are moot; therefore, the Court lacks subject matter jurisdiction. Second, they allege that the Board of Regents of the University of Nebraska (BRUN), the University of Nebraska, UNL, the UPD (collectively, the "Nebraska Defendants"), and Jackson and Yardley in their official capacities are immune from suit under the Eleventh Amendment of the United States Constitution. Third, Defendants allege that Perkins's claims against Yardley and Jackson in their individual capacities fail under the

doctrine of qualified immunity. The Court concludes that Perkins's federal claims must be dismissed, with prejudice, and his state law claims dismissed, without prejudice.

## I. Mootness

In addition to money damages, Perkins seeks declaratory prospective relief against all Defendants. "[U]nder the doctrine set forth in *Ex Parte Young,* 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment." *Monroe*, 495 F.3d at 594. Thus, "*Ex parte Young* simply permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law." *Randolph v. Rodgers,* 253 F.3d 342, 348 (8th Cir. 2001).

The *Ex Parte Young* exception does not apply here, because the Ban against Perkins was lifted and his claims for prospective relief are moot. *See In re Gretter Autoland, Inc.*, 864 F.3d 888, 891 (8th Cir. 2017). Further, UNL's procedures were amended to provide that a person wishing to appeal a ban-and-bar notice may request an in-person or telephone hearing. Thus, there is no indication that Perkins's claims for prospective relief are "capable of repetition, yet evading review." *See Ayyoubi v. Holder*, 712 F.3d 387, 391 (8th Cir. 2013) (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)). Accordingly, claims for prospective relief are moot, and must be dismissed.

## II. Sovereign Immunity

Sovereign immunity bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the states' immunity or a state has consented to suit or waived its immunity. *See Seminole Tribe v. Florida,* 517 U.S. 44, 74 (1996); *Pennhurst State Sch. & Hosp. v.*

*Halderman,* 465 U.S. 89, 100 (1984). The Eighth Circuit has held that "[w]hile under the doctrine set forth in *Ex Parte Young,* 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies." *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *see also Anthony K. v. State,* 855 N.W.2d 802, 785 (Neb. 2014).

### a. Sovereign Immunity of the Nebraska Defendants

Both the Nebraska Supreme Court and the Eighth Circuit Court of Appeals have held that the BRUN and the University of Nebraska, including UNL, are state agencies and thus entitled to state sovereign immunity under the Eleventh Amendment to the U.S. Constitution. *See Doe v. Bd. of Regents of the Univ. of Neb.*, 788 N.W.2d 264, 281, n. 51 (Neb. 2010) (affirming dismissal of claims against the BRUN and concluding that the universities within the University of Nebraska system are state agencies entitled to sovereign immunity); *see also Bd. of Regents of Univ. of Neb. v. Dawes*, 370 F. Supp. 1190, 1193 (D. Neb. 1974) (concluding that Neb. Rev. Stat. § 85–105 does not grant the BRUN the power to waive immunity from suit in federal court). The Nebraska Supreme Court has also recognized that the UPD is a department of UNL. *See Univ. Police Officers Union, Int'l Bhd. of Police Officers, Local 567 v. Univ. of Neb.*, 277 N.W.2d 529, 539 (Neb. 1979).

There is no evidence that the BRUN has waived its sovereign immunity as to Perkins's claims, nor is there evidence that the University of Nebraska, UNL, or UPD have waived their sovereign immunity. Accordingly, Perkins's claims against the BRUN, the University of Nebraska, UNL, and the UPD will be dismissed.

### b. Claims Against Jackson and Yardley in Their Official Capacities

In addition to barring claims against a state, "the Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'" *Treleven v. Univ. of Minn.,* 73 F.3d 816, 818 (8th Cir. 1996) (footnote omitted) (quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945)); *see also Grand River Enters. Six Nations, Ltd. v. Beebe,* 467 F.3d 698, 701 (8th Cir. 2006) ("The Eleventh Amendment protects states from being sued in federal court without their consent and also bars suits against state officers acting in their official capacities when the state itself is 'the real, substantial party in interest.'" (quoting *Ford Motor Co.,* 323 U.S. at 464)). Perkins's Complaint asserts claims against Jackson and Yardley in their official capacities and seeks relief that includes money damages. For such claims, the state entities are the real parties in interest and Perkins's claims for money damages against Jackson and Yardley in their official capacities must be dismissed.

### III. Qualified Immunity

The only potential federal claims remaining are Perkins's claims for money damages against Jackson and Yardley in their individual capacities. Defendants argue that Jackson and Yardley in their individual capacities are entitled to qualified immunity. To determine whether they are "entitled to qualified immunity, [the Court] must conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (quoting *Jones v. McNeese*, 675 F.3d 1158,

1161 (8th Cir. 2012)). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The Court concludes that Perkins has not identified a clearly established constitutional right that these Defendants allegedly violated. Even if the right he asserts *were* clearly established, Perkins has failed to show that these Defendants deprived him of such a right.

### A. Clearly Established Right

Perkins asserts that he has a "protected property interest in his education at the Defendant University of Nebraska" and a "protected liberty interest in his education at the Defendant University of Nebraska." Complaint ¶¶ 28, 30, ECF No. 1, Page ID 6. For such rights to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Perkins must identify analogous case law or a statute establishing that reasonable officials should have known that their conduct was unlawful. *See Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993).

The Eighth Circuit has stated that "procedural due process must be afforded a student on the college campus 'by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures.'" *Jones v. Snead*, 431 F.2d 1115, 1117 (8th Cir. 1970) (quoting *Esteban v. Cent. Mo. State Coll.*, 415 F.2d 1077, 1089 (8th Cir. 1969)). The Eighth Circuit later specified that "expulsion proceedings entitled [a student] to some level of due process. *See Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 440 (8th Cir. 1998)

(citing *Goss v. Lopez,* 419 U.S. 565 (1975)). In *Esteban*, the court also noted that it was not certain "whether attenance [sic] at [a public university], or staying there once one has matriculated, is a right rather than a privilege." 415 F.2d at 1089.

Perkins was not expelled, nor is there any indication that he was threatened with expulsion. Defendants submitted evidence that Perkins has been enrolled at UNL from the fall of 2016 until the present time, and he completed his 2016-2017 second semester classes on April 29, 2017, in good academic standing. Morrell Aff. ¶ 2, ECF No. 20-1, Page ID 143. Perkins counters that the Ban prevented him from attending his classes from April 15, 2017, through the end of the semester and that, as a result, his cumulative grade point average dropped from a 3.8 to a 3.6. Perkins Aff. ¶ 7, ECF No. 18-1, Page ID 125. Even if the Ban prevented Perkins from attending his classes for the last two weeks of the Spring 2017 semester, he was not expelled nor suspended. Perkins has cited no authority suggesting he had a property interest or liberty interest entitling him to enter UNL's campus during the time he was subject to the Ban, and the Court cannot conclude that Perkins had a clearly established constitutional right to enter the campus.

### B. Deprivation of Right

Even if the Ban was tantamount to expulsion, and even if Perkins had a clearly established right to enter the UNL campus until such right was curtailed through due process, Perkins has not shown that he was deprived of procedural due process. The Eighth Circuit has stated that although students may be entitled to due process for student discipline, "we have cautioned 'that it is not sound to draw any analogy between student discipline and criminal procedure.'" *Jones*, 431 F.2d at 1117 (quoting *Esteban*,

415 F.2d at 1089). Thus, this Court has recognized that it "must exercise 'care and restraint' in reviewing a school's decision to expel a student." *Swait v. Univ. of Neb. at Omaha*, No. 8:08CV404, 2008 WL 5083245, at *2 (D. Neb. Nov. 25, 2008) (quoting *Woodis,* 160 F.3d at 438).

Perkins alleges that he did not have an opportunity to challenge the Ban, but the record contradicts that assertion. In Perkins's own affidavit, he described the disciplinary proceedings in which he was represented by counsel. ECF No. 18-1, Page ID 126. The UNL Code of Conduct Board met on August 7, 2017, for a hearing on the charges against Perkins. After the hearing, the Board issued a decision and indicated to Perkins how to file an appeal. ECF No. 16-2, Page ID 110. Moreover, not only did Perkins receive a hearing, the Ban was lifted. Thus, as to the Ban, Perkins obtained his desired outcome. Based on the evidence in the record, Defendants provided Perkins an opportunity for a hearing, an opportunity for appeal, and the opportunity to consult with counsel. Perkins does not deny that the hearing took place, nor does he assert that the procedures at the hearing were inadequate.

Perkins argues that, even though the Ban was lifted, the nature and timing of the proceedings entitle him to damages. He relies on *Scoggin v. Lincoln Univ.*, 291 F. Supp. 161 (W.D. Mo. 1968), where two students sued a public university, alleging that they were dismissed in violation of the First, Fifth, and Fourteenth Amendments. *Id.* at 162. The university reinstated the students after the court found in their favor. *Id.* at 170. After reinstatement, the university sought to dismiss the students' remaining claims as moot. *Id.* The court rejected the university's argument, concluding that the students had yet to receive due process for their claim of wrongful suspension. *Id.* at 170-71.

The reasoning in *Scoggin* is inapplicable to Perkins's case for several reasons.[2] In *Scoggin*, the court rejected the university's mootness claims, and found that the students' rights had been violated because they never received notice or an opportunity to be heard. Here, it is undisputed that Perkins was given the opportunity for a hearing; he had actual notice of the hearing; he was represented by counsel; and he was given an opportunity for an appeal. After the hearing, and before any judgment or decision in this Court, the Ban was lifted and the University's policies were amended to clarify due process rights in such proceedings.

Although Perkins appears to argue that he should have been provided a hearing before he missed any classes in the Spring 2017 semester, he offers no authority or explanation as to why the timing of the hearing was unreasonable under the circumstances. The court in *Scoggin* noted that, when applying student discipline, an institution "need not fear that one of its students will be able to maintain some sort of federal court action before the institution has had a reasonable period of time under the circumstances within which to conduct a proper disciplinary proceeding in accordance with its established code." 291 F. Supp. at 173.

Finally, Perkins implies that UNL violated his due process rights because UNL Title IX representatives initially told him the disciplinary proceedings would not affect the Ban. Yet Perkins admits that the University of Nebraska did inform him that the results of the disciplinary proceedings could affect the Ban. ECF No. 18-1, Page ID 126.

---

[2] Perkins refers to *Scoggin* as an Eighth Circuit case and even indicates that *Scoggin* was reported in "291 F. Supp. 161 (8th Cir. 1968)." Pl. Br. at 7, ECF No. 19, Page ID 134. Perkins citation clearly refers to a district court case published in the Federal Supplement. *Scoggin* is not an Eighth Circuit decision, and Perkins has not pointed to any Eighth Circuit decision expressly adopting the holding or reasoning in *Scoggin*.

Perkins suggests that because this notice did not come until after he filed his Complaint, he would not have received due process if he had not filed the Complaint. The Court concludes that UNL conducted its disciplinary proceedings within a reasonable time, resulting in the Ban being lifted, and even if Perkins had a property or liberty interest in maintaining access to the UNL campus, Jackson and Yardley did not deny him such a right without due process. Accordingly, they are entitled to qualified immunity from suit.

## IV. State Law Claim

Perkins asks that the Court exercise supplemental jurisdiction over his remaining state law claim. When supplemental jurisdiction is relevant and a "district court has dismissed all claims over which it has original jurisdiction," then "[t]he district court[ ] may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367. If the district court declines to exercise supplemental jurisdiction, then the district court has the discretion to remand the case to state court or to dismiss the case without prejudice. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). The Court will decline to exercise its supplemental jurisdiction, and elects to dismiss Perkins's state law claim, without prejudice.

## CONCLUSION

The Court lacks subject matter jurisdiction over the Nebraska Defendants and the individual Defendants in their official capacities under the doctrine of sovereign immunity and mootness. Jackson and Yardley, in their personal capacities, are entitled to qualified immunity from suit, because the rights Perkins seeks to vindicate were not clearly established, nor has he shown that he was deprived of the rights he asserts. The Court will decline to exercise its supplemental jurisdiction over Perkins's state law claim.

IT IS ORDERED:

1. Defendants' Motions to Dismiss, ECF No. 15, converted, in part, to a motion for summary judgment, are granted;

2. Plaintiff Jeremiah Perkins's first cause of action is dismissed, with prejudice;

3. Plaintiff Jeremiah Perkins's second cause of action is dismissed, without prejudice; and

4. A separate judgment will be entered.

Dated this 13th day of November, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge